IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOHN DOTY | § | |
| | § | |
|    Plaintiff, | § | |
| | § | Case No. 1:21-cv-00941 |
| v. | § | |
| | § | |
| JOEL BAKER, IN HIS OFFICIAL | § | JURY DEMANDED |
| CAPACITY AS CHIEF OF THE FIRE | § | |
| DEPARTMENT OF THE CITY OF | § | |
| AUSTIN, AND THE CITY OF AUSTIN | § | |
| | § | |
|    Defendant. | § | |

## PLAINTIFF JOHN DOTY'S COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiff John Doty files his Complaint against Defendants Joel Baker, in his official capacity as Chief of the Fire Department of the City of Austin and the City of Austin pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and the Texas Labor Code § 21.051. For his causes of action, Doty would show as follows:

## PARTIES

1. Plaintiff John Doty is a citizen of the State of Texas. Mr. Doty is a male.

2. Defendant Joel Baker is the chief of the Austin Fire Department and may be served at 4201 Ed Bluestein Boulevard, Austin, TX 78721.

3. Defendant the City of Austin ("City") is a governmental entity located in Travis County, Texas. The City can be served with process through the City's clerk, Jannette Goodall, Austin City Hall, 301 West Second Street, Suite 1120, Austin, TX 78701.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C § 1331, 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1367(a).

5. The Court has personal jurisdiction over Defendants.

6. Venue is proper in this Court, as Defendants reside in Texas.

## PROCEDURAL PREREQUSITES TO SUIT, EXHAUSTION OF ADMINISTRATIVE REMEDIES, AND TIMELINESS OF SUIT

7. The City is an entity engaged in an industry affecting commerce which has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or proceeding calendar year. The City is an employer as defined by Title VII and the Texas Labor Code. 42 U.S.C. § 2000e(b); TEX. LABOR CODE § 21.002(8)(D).

8. Mr. Doty is an individual previously employed by the City. At all relevant times, Mr. Doty worked for the City. Mr. Doty is an employee as defined by Title VII and the Texas Labor Code. 42 U.S.C. § 2000e(f); TEX. LABOR CODE § 21.002(7).

9. Mr. Doty was terminated by the City on January 19, 2021.

10. On July 12, 2021, Mr. Doty filed a Notice of Discrimination with the Equal Employment Opportunity Commission (the "EEOC") and an Employment Discrimination Complaint Form with the Texas Workforce Commission Civil Rights Division (the "TWC").

11. The Notice of Discrimination and the Employment Discrimination Complaint Form were filed within 180 days of the discriminatory acts forming the basis of Mr. Doty's claims.

12. On August 19, 2021, Mr. Doty received a Dismissal and Notice of Rights from the EEOC.

13. Mr. Doty filed this suit within 60 days of his receipt of his Dismissal and Notice of Rights.

## FACTUAL BACKGROUND

14. In September 2019, Mr. Doty was accepted into the Austin Fire Department ("AFD") class 128, to start in the academy in October 2019. Mr. Doty was also offered to option to defer to AFD class 129, to start in the academy on January 21, 2020. Mr. Doty signed his intent letter and agreed to defer to AFD class 129.

15. Shortly thereafter, Mr. Doty's brother-in-law, Travis Haiduk, was offered a spot in AFD class 129. Mr. Haiduk also accepted his spot. Mr. Doty is married to Mr. Haiduk's sister.

16. Mr. Doty and Mr. Haiduk entered the AFD academy on January 21, 2020. During their time in the academy, Mr. Doty and Mr. Haiduk developed their own reputations and their own social circles. Mr. Doty excelled at the academy and did well on his skills and written testing. This was particularly impressive given that AFD class 129 went through the academy during the outbreak of the COVID-19 pandemic.

17. The academy did not have an official graduation for AFD class 129, but some cadets coordinated an unofficial graduation where the cadets brought family and significant others. Mr. and Mrs. Doty attended the unofficial graduation, where Mrs. Doty introduced herself as both Mr. Doty's wife and Mr. Haiduk's sister.

18. Multiple AFD team members, including active, full-duty firefighters, were present at the unofficial graduation, and were aware of the relationship between Mr. Doty and Mr. Haiduk. None of these team members informed Mr. Doty of any issue with Mr. Doty and Mr. Haiduk being in the same class, and no one told Mr. Doty to inform commanding officers about the relationship.

19. Following graduation from the academy, Mr. Doty and Mr. Haiduk began their tenure as probationary firefighters. Mr. Doty was assigned to Station 15-B Shift, starting in August 2020. Mr. Haiduk was assigned to Station 50-B Shift. These assignments put Mr. Doty and Mr.

Haiduk in the same Battalion at the AFD, but they would not work together and would likely not see one another. This was the case for most of their time as probationary firefighters. Neither Mr. Doty nor Mr. Haiduk had any discretion or input into any assignment as probationary firefighters.

20. Mr. Doty was eventually moved from Station 15 to Station 50, then to Station 5, and finally to Station 42. Mr. Haiduk eventually moved from Station 50 to Station 5, and finally to Station 42. At no point during either Mr. Doty or Mr. Haiduk's tenure were Mr. Doty and Mr. Haiduk both assigned to Stations 50 or 5 at the same time.

21. Mr. Doty was an exemplary probationary firefighter. He woke up early and went to bed late in order to work and help around the station. Mr. Doty trained with all of the crews at the station and worked on his probationary skills to make sure he completed them quickly and proficiently.

22. In November 2020, both Mr. Doty, who was at Station 5 at that time, and Mr. Haiduk, who was at Station 42 at that time, tested positive for COVID-19 within a week of one another. Both Mr. Doty and Mr. Haiduk missed time at the AFD. Based on this missed time, Captain Colosky and Battalion Chief McKay (who was responsible for Station 42) decided that they would keep Mr. Haiduk at Station 42. Captain Colosky and Battalion Chief McKay then decided to rotate Mr. Doty to Station 42 to do "truck work." Mr. Doty was the only probational firefighter who was assigned to work this role during the probation, which was a sign of good performance. Mr. Doty's strong performance was confirmed by Captain Colosky and Lieutenant Zoch when they let Mr. Doty know that they thought very highly of Mr. Doty's work ethic and self-motivation.

23. This was the only time that Mr. Doty and Mr. Haiduk worked at the same Station. But during this time, Mr. Doty and Mr. Haiduk never worked on the same "unit" (i.e., Engine

Company, Quint Company, Ladder Company, Tower Ladder Company, or Special Unit).

24. In January 2021, Mr. Doty passed his finals skills tests and policies and map test. Once Mr. Doty finished his final shift, he would official complete his probation and become an AFD firefighter.

25. But during Mr. Doty's final shift as a probationary firefighter, Mr. Doty learned that he would be terminated from the AFD because he allegedly violated an AFD policy about serving in the same unit as a close relative.

26. Mr. Doty did not violate this policy, because he never served on the same unit as Mr. Haiduk. While Mr. Doty and Mr. Haiduk did serve at the same station (Station 42) for a brief period (November 2020 through January 2021), they never served on the same unit. Nonetheless, Mr. Doty was terminated by Chief Baker, Chief of the AFD, on January 19, 2021.

27. Mr. Doty also learned that multiple other individuals who should have been subject to this same policy because they were close relatives working on the same unit. None of these individuals were terminated by the AFD for violating this policy.

28. For example, Lieutenant James Garee and his wife, Specialist Meredith Garee, were assigned to Station 31, Engine 31 with a Kelly Shift of B11 from October 2019 to at least November 2019, and although Mrs. Garee was "assigned" to Station 28 in November 2019, she remained at Station 31. Mr. Garee and Mrs. Garee continue to be employed by the City.

29. Another example involves Hillary Higdon and her son, Max Higdon, working together at Station 34 on Shift 34A, on the same Quint and in the same unit. It was well known that Mrs. Higdon and Mr. Higdon are related: a battalion chief works at Station 34, so it would have been very obvious to the chain of command that the Higdons were working together. Neither Mrs. Higdon nor Mr. Higdon were terminated by the City for violating this policy.

30. Another example involves Fire Specialist Rikki Stankevitz and her husband, Jeremy Corpus, who have worked together to train firefighters for approximately six years. That Mrs. Stankevitz and Mr. Corpus are married is well known to the chain of command.

31. A final example involves Brittany Kish and her wife, Samantha Kish, who work together at Station 40, B Shift and C Shift, which means that they relieve one another from shifts. There is always an overlap between the shift (sometimes for as much as 45 minutes to an hour), which would lead to Mrs. Kish and Mrs. Kish working together. Ms. Stankevitz and Mr. Corpus are still employed by the City. Neither Mrs. Kish nor Mrs. Kish were terminated by the City.

32. The only difference between these close relations and Mr. Doty and Mr. Haiduk is that all of the situations where the City allowed close relations to continue to work together involved a female. But when the close relationship involved two men (here, Mr. Doty and Mr. Haiduk), the City fired both individuals.

33. There existed no legitimate, non-discriminatory reason for the City to terminate Mr. Doty's employment. The City's assertion that it terminated Mr. Doty's employment for violation of an internal policy is pretext for unlawful discrimination.

**CLAIM I: VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

34. Mr. Doty reasserts and incorporates by reference all of the foregoing factual allegations.

35. The City terminated Mr. Doty because of his sex.

36. The City has not terminated female employees for acts similar to or more egregious than the acts Mr. Doty engaged in.

37. The City held Mr. Doty to a higher standard in the terms and conditions of his employment than similarly-situated female employees of the City.

38. The City disciplined Mr. Doty, terminating his employment, in a manner and degree the City has not applied to similarly-situated female employees.

39. The City's termination of Mr. Doty's employment constitutes discrimination on the basis of sex in violation of Title VII.

40. Any purported legitimate, non-discriminatory reasons the City proffers for terminating Mr. Doty's employment are pretext for discriminating against Mr. Doty based upon his sex.

41. The City's acts and omissions culminating in termination of Mr. Doty's employment constitute unlawful and willful discrimination against Mr. Doty based upon his sex in violation of Title VII.

42. The City's acts and omissions culminating in termination of Mr. Doty's employment constitute unlawful disparate treatment of Mr. Doty because of his sex.

43. The City has engaged in a pattern and practice of discriminating against male employees because of their sex.

44. As a result of the City's discriminatory practices, Mr. Doty has been damaged; deprived of employment, promotion, raises, compensation, and other terms and conditions of employment; and disciplined more severely than female employees engaging in similar or more egregious conduct.

45. As the proximate result of the City terminating Mr. Doty's employment on the basis of his sex, Mr. Doty has sustained losses of salary, commissions, bonuses, income, benefits, and promotional opportunities.

46. The City's conduct as stated in this Complaint constitutes disparate treatment and shows that the City intentionally and willfully violated Title VII. The City knew that its conduct

violated Title VII. The City's conduct shows malice or reckless disregard for Mr. Doty's rights under Title VII. The City engaged in a reckless act of discrimination in terminating Mr. Doty's employment.

47. The City is liable to Mr. Doty for back pay and benefits and front pay and benefits he has lost as the proximate result of the City discriminating against him on the basis of sex in amounts to be proven at trial.

48. The City is liable to Mr. Doty for compensatory damages in amounts to be proven at trial pursuant to Title VII.

49. The City is liable to Mr. Doty for damages to his personal and professional reputation and relationships and loss of professional and employment opportunity arising from the City terminating Mr. Doty's employment and asserting as the alleged legitimate, non-discriminatory reason for termination of Mr. Doty's employment that Mr. Doty violated the City policy.

50. The City is liable to Mr. Doty for punitive damages in amount sufficient to penalize, punish, and deter the City as provided by Title VII.

51. Mr. Doty is entitled to recover his costs and expenses of litigation, including attorneys' fees, arising from City discriminating against him on the basis of sex as provided by Title VII and 42 U.S.C. § 1988.

## CLAIM II: VIOLATION OF THE TEXAS LABOR CODE

52. Mr. Doty reasserts and incorporates by reference all of the foregoing factual allegations.

53. Contrary to Texas Labor Code § 21.051, the City has discriminated against Mr. Doty because of, and with a motivating factor being, sex by discharging him and other manners of

discrimination that affected his compensation and material terms, conditions, and privileges of employment.

54. Contrary to Texas Labor Code § 21.055, the City has retaliated against Mr. Doty because of, and with a motivating factor being, sex because it enforced a policy against Mr. Doty that it did not enforce against females in a similar position. The manner in which the City retaliated was by discharging Mr. Doty and other manners that affected his compensation and material terms, conditions, and privileges of employment.

55. As a direct and foreseeable result of these discriminatory practices, Mr. Doty has incurred substantial damages for which he now sues. Mr. Doty has suffered damages which include but are not limited to compensatory damages, back pay, front pay, other allowable economic damages, court costs, reasonable and necessary attorneys' fees and expert fees pursuant to Texas Labor Code § 21.259, and punitive damages because the City's conduct was by a principal and demonstrates that the conduct was intentional and or with malice or reckless indifference to the state-protected rights of Plaintiff and others.

## INTEREST

Mr. Doty seeks pre-judgment and/or post-judgment interest to the maximum rates allowed.

## JURY DEMAND

Mr. Doty requests trial by jury to all issues so triable in this action.

## REQUESTS FOR RELIEF

For these reasons, Mr. Doty respectfully requests that the Court grant a full and final judgment in favor of Mr. Doty and against the City for all back pay and benefits, front pay and benefits, punitive damages under Title VII, prejudgment and postjudgment interest at the highest rate allowed by law, reasonable and necessary attorneys' fees, costs of suit, and all other relief to which it is justly entitled. Mr. Doty also respectfully requests that the Court grant injunctive relief

in the form of reinstating Mr. Doty's employment with all promotions, raises, and benefits he would have received or to which he would have been entitled had the City not engaged in unlawful employment discrimination and enter judgment in favor of Mr. Doty and against the City for all back pay and benefit, losses, and damages he incurred during the period beginning with the City's termination of Doty's employment through reinstatement.

> Respectfully submitted,
>
> By: /s/ Kevin J. Terrazas
>     Kevin J. Terrazas
>     State Bar No. 24060708
>     **CLEVELAND | TERRAZAS PLLC**
>     325 Camp Craft Road, Suite 303
>     West Lake Hills, Texas 78746
>     512-680-3257
>     kterrazas@clevelandterrazas.com
>
>     **ATTORNEY FOR PLAINTIFF**